OCEAN GROVE CAMP MEETING ASSOCIATION OF THE METHODIST EPISCOPAL CHURCH, PROSECUTOR. v. THE BOARD OF EDUCATION OF THE TOWNSHIP OF NEPTUNE, RESPONDENT.

Decided March 31, 1925.

**Eminent Domain—Proposed Condemnation of Land by a Municipality, Belonging to a Corporation, the Ocean Grove Camp Meeting Association—Contention That Property Cannot be Acquired under General Condemnation Acts Where Such Acquisition Will Destroy or Impair the Corporate Franchise—The Corporate Franchise Here in Question is That of a Camp Meeting Association, the Land in Question is Occupied by a Garage—Held, That the Franchise Will Not be Interfered With.**

For the prosecutor, *McCarter & English.*

For the respondent, *Geran & Mallack.*

The opinion of the court was delivered by

LLOYD, J. This is an application for a writ of *certiorari* to review condemnation proceedings taken by the board of education of the township of Neptune to acquire certain lands held in fee-simple by the Ocean Grove Camp Meeting Association of the Methodist Episcopal Church. From the affidavits filed on this application it appears that lots Nos. 245, 246, 267-A and 268-A, as laid out on a plan of maps attached to said affidavits and lying within the boundaries of Ocean Grove, are sought to be acquired by the board of education to afford additional school buildings for school purposes in the township.

The application for this writ is based upon the rule that corporate property cannot be acquired under general condemnation acts where such acquisition will destroy or impair the franchise of such corporation, and it is contended in this case that to permit the condemnation here sought to be effected would have such result. To determine this question it is necessary to consider the nature and scope of the charter of incorporation of the prosecutor and of the relation thereto of the land sought to be condemned. Reference to the charter itself which was enacted in 1870, chapter 157, provides that it shall be lawful for the corporation to purchase and hold real and personal estate and to acquire lands in this state in fee-simple or otherwise "as they may deem necessary, proper or desirable for the object of the corporation, and the same or any part thereof to dispose of, in parcels or otherwise, in fee-simple or otherwise, on such terms, conditions and restrictions not repugnant to the laws of this state or the United States as they may see fit." The purposes for which the corporation is formed "shall be the providing and maintaining for the members and friends of the Methodist Episcopal church a proper, convenient and desirable permanent camp meeting ground and Christian seaside resort."

The lands in question, from the affidavits filed, appear to have been leased by the association for a period of years, and were occupied until September, 1914, by the tenant for the purpose of a public garage and livery stable, at which time

the board of education purchased the leasehold. Supplement-ary thereto the present condemnation proceedings were in-stituted to acquire as against the lessor, the camp meeting association, the land for the purpose as already indicated. For the writ, counsel rely upon the class of authorities illus-trated by *New Jersey Southern Railroad Co.* v. *Commission-ers,* 39 *N. J. L.* 28; *Jersey City* v. *Montclair Railroad,* 35 *Id.* 328; *New York, &c., Railroad* v. *Patterson,* 61 *Id.* 408, to the effect that under the general power of condemnation, a destruction of the franchise of a corporation cannot be ef-fected. In my opinion this case does not fall within such a class. The purposes of the Ocean Grove Camp Meeting Asso-ciation are distinctly set out in the charter as recited above. In this case I am not confronted with the taking of property devoted to any such uses, and am not, therefore, called upon to determine the abstract question whether the property of the association leased by it to individual members or others for the purposes named in the charter can be acquired by the board of education. Whatever of purpose there may have been in the acquisition of the lots in question a wide de-parture from the uses specified in the charter have been made or permitted by the association in the construction of a garage thereon. It is clearly apparent that the taking of these lots, already parted with for a period of ninety-nine years with the privilege of extension for like periods in perpetuity and on which, without apparent objection a public garage has been constructed by the tenant, is in nowise an impairment of the franchise of the association. In the *New York and Long Branch Railroad Co.* v. *Drummond Case,* 46 *Id.* 644, where some minor passenger and freight platforms of the railroad company were being disturbed by the line of projected high-way, the Court of Errors and Appeals uses this language: "Conceding it to be proved that they [the platforms] are entirely within the railroad line, they are not of such charac-ter or so essential to the enjoyment of the franchise of the company that they may not, in subserviance to the public necessity and convenience, be removed out of the way of a public road." Applying this rule to the case in hand, my

conclusion is that the lands sought to be acquired are not so essentially a part of the necessary exercise of the franchise of the corporation as to be beyond the reach of condemnation proceedings under general acts. Whether directly or indirectly the association is responsible for the devotion of this property to purposes lying outside of those contemplated by its charter and essential to its franchise necessities, it is quite apparent that its commercial use sets it apart and places it in the same category as the property of any other owner, individual or corporation. To hold otherwise would be, in effect, to sustain the proposition that the association may purchase the lands of the township, lease them for business purposes, and derive a revenue therefrom of a commercial nature totally variant to the intendment of its corporate franchises, and thus preclude the school authorities from obtaining the necessary facilities for the education of the children of the members of the very corporation which is now resisting the taking of lands for such purposes. The case is so clear in my mind that I would not be justified in allowing the writ of *certiorari*, and it is therefore denied.